IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERNICIA D. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 1:19-CV-137-ECM-SRW |
| | ) |
| RON WILSON et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION[1]

### I.  Introduction

Plaintiff, who is proceeding *pro se*, filed this action on February 21, 2019, bringing claims against defendants Ron Wilson, Louise Wilson, Patrick Wilson, Hart Ramsey, Alethia Ramsey, Gwen G. Oliver, Demitta Wilson, and Phyliss Bolden for "extortion, invasion, attempted murder, discrimination, racism, bigotry, indignation, famine, [and loss of] shelter." Doc. 1 at 1. Along with her complaint, plaintiff also filed a motion to proceed *in forma pauperis*. Doc. 2. On May 30, 2019, the magistrate judge previously assigned to the case ordered plaintiff to file an amended complaint providing factual allegations to support her claims. Doc. 6. On June 12, 2019, the judge granted plaintiff's motion to proceed *in forma pauperis* and instructed the plaintiff to file a second amended complaint that "clearly ties her factual allegations to a violation of federal law." Doc. 9. *In forma pauperis* proceedings are governed by 28 U.S.C. § 1915, which requires this court to conduct a preliminary review of the complaint to ensure that the action is not "frivolous or

---

[1] By order entered February 26, 2019, the district judge referred this case to Magistrate judge Gray M. Borden for consideration and disposition or recommendation on all pretrial matters. Doc. 4. The case was reassigned to the undersigned on June 26, 2019. Docket Entry, June 26, 2019.

malicious," "fails to state a claim on which relief can be granted," or "seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B).

After conducting a § 1915 review, the undersigned finds that plaintiff's complaint should be DISMISSED prior to service of process for failure to state a claim.

## II. Discussion

In reviewing the sufficiency of plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), the court begins by assessing whether or not the complaint complies with the pleading standard applicable to all civil complaints in federal courts. *See Thompson v. Rundle*, 393 F. App'x 675, 678 (11th Cir. 2010) ("A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6). Dismissal for failure to state a claim is appropriate when the facts as pleaded do not state a claim for relief that is 'plausible on its face.'") (citations omitted)). Rule 8 of the Federal Rules of Civil Procedure requires plaintiff to file a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,'" but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In general, a pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "it if tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, in order to satisfy Rule 8(a), plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief which

is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *accord Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015). "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful"; "[f]actual allegations that are merely consistent with a defendant's liability are not facially plausible." *See Urquilla-Diaz*, 780 F.3d at 1051 (internal citations omitted).

In addition to her initial complaint (Doc. 1), plaintiff submitted a filing (Doc. 8) in response to the court's first order to amend her complaint (Doc. 6), another filing (Doc. 10) in response to the court's second order to amend her complaint (Doc. 9), and two supplemental filings (Docs. 7, 11). Once a complaint is amended, the only issues before the court are those raised in the amended document, and plaintiff will not be permitted to rely upon or to incorporate his or her prior pleadings by reference. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210. 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." (internal citation omitted)). However, because the court applies a less-stringent standard to a *pro se* plaintiff's pleadings, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), this court has examined each of plaintiff's filings in conjunction as discussed below. Even in conjunction, and liberally construed, plaintiff's pleadings fail to state a claim upon relief can be granted.[2] Accordingly, plaintiff's claim should be dismissed prior to service of process in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[2] The court is sympathetic to plaintiff's efforts to assert her claims without the assistance of an attorney. However, plaintiff is not altogether unfamiliar with the pleading requirements in federal

3

A.   Initial Complaint

Plaintiff's initial complaint alleges "extortion, invasion, attempted murder, discrimination, racism, bigotry, indignation, famine, [and loss of] shelter." Doc. 1 at 1. For these alleged wrongs, plaintiff seeks $1 million dollars in damages. *Id.* at 2. Plaintiff's initial filing also includes a citation to 18 U.S.C. § 242, which provides individuals with a cause of action for constitutional violations committed under color of law. Doc. 1-2 at 5.

The court understands plaintiff's initial complaint to allege that:

(1) Hart Ramsey, Alethia Ramsey, Ron Wilson, and Phyliss Bolden made false statements regarding plaintiff's mental state;

(2) Alethia Ramsey harassed plaintiff by attempting to have her involuntarily committed;

(3) Demitta Wilson and Patrick Wilson made calls to plaintiff's family alleging that plaintiff was acting out and not taking her medication;

(4) Alethia Ramsey called plaintiff's mortgage company "stat[ing] incorrect facts," "follow[ed] [plaintiff] around," and "watch[ed] [plaintiff's] house";

(5) Hart Ramsey broke into plaintiff's home;

(6) Gwen Oliver and Alethia Ramsey contacted city officials in Dothan, AL alleging that plaintiff was "retarded" and "mentally ill"; and

(7) Louise Wilson and Hart Ramsey betrayed plaintiff by accepting "hush money."

*Id.* at 1-3. Plaintiff's complaint also appears to make several allegations against individuals who are not named defendants in this case. It claims that Rose Gordon acted together with

---

court. Plaintiff previously had a claim dismissed for failure to state a claim under 28 U.S.C. § 1915(e) and appealed that dismissal to the Eleventh Circuit, which affirmed the district court's ruling. *See Wilson v. Gordon*, No. 1:18-CV-00387-WKW-SMD. Plaintiff also has a pending claim that is currently under § 1915(e) review by Magistrate Judge Stephen Doyle. *See Wilson v. Alabama*, No. 1:18-CV-00823-ECM-SMD.

4

Alethia Ramsey in allegation (4) above; that Adrian Folmer acted together with Hart Ramsey in allegation (5) above; that plaintiff was "choked in a wheelchair and restrained to a bed" by five sheriffs in 2014; and, that Benjamin Lewis, Carla Woodall, Jessica Lair, and "Patrick Davenport['s] assistant Heather" provoked plaintiff and labeled her as a threat. *Id.* at 2-3. Plaintiff's complaint notes that the alleged violations of her civil rights occurred from 2005 to 2014 in Headland, AL and Dothan, AL. Doc. 1 at 1.

Plaintiff's initial complaint does not clearly state what harms she suffered as a result of the alleged actions of the defendants—in other words, what impact the defendants' actions had on her—or provide specific information about the alleged actions of the defendants—for instance, by including how and when plaintiff's house was broken-into, and how plaintiff discovered the entry. Without further factual details which would enable the court reasonably to infer that defendants' conduct was unlawful, plaintiff's allegations are no more than conclusory accusations of harm.

Plaintiff's initial complaint also does not clearly identify the cause(s) of action under which she brings her claims. Plaintiff does explicitly mention 18 U.S.C. § 242, but that statute cannot provide plaintiff with a civil cause of action and provides no civil remedy because it is a criminal statute. *Butler v. Morgan*, 56 F. App'x 832, 835 (11th Cir. 2014) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)).[3]

  B.  First Supplemental Filing

---

[3] Under *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this court is bound by cases decided by the former Fifth Circuit before October 1, 1981.

On May 30, 2019, plaintiff filed a document labeled "rewrite of the original copy" addressed to this court. Doc. 7. Plaintiff's supplemental filing appears to allege that:

(1) Michael Woodside, a police officer, used excessive force against her;

(2) Rose Gordon directed others to follow plaintiff and to break into her home to remove evidence; and

(3) Rose Gordon "useds [sic] friends and family to harm and harass" plaintiff.

Doc. 7 at 1-2. This court notes that Woodside and Gordon are not named as defendants in this case. Plaintiff's filing also includes a letter dated February 28, 2019, addressed to "the Wilson Family" from the plaintiff. Doc. 7 at 4. The letter states that plaintiff is sorry for "embarrassment[] and the inconvience [sic] of privacy" due to the "stalking, harassment and violations caused by Alethia Ramsey and Gwendolyn Oliver[.]"[4] *Id.* This filing does not clearly state the harms plaintiff suffered as a result of the aforementioned allegations or provide further factual details about the allegations.

    C.    First Responsive Filing

On May 30, 2019, the court directed plaintiff to file an amended complaint, in compliance with the Federal Rules of Civil Procedure, which provides sufficient factual matter for the court to determine whether her claims have merit. Doc. 6 at 2. The order warned that "failure to submit an amended complaint in compliance with this Order may result in a recommendation of dismissal" of her case. *Id.* Plaintiff filed a response to the order on June 11, 2019. Doc. 8. Plaintiff's response ("first amended complaint") appears to allege that:

---

[4] Plaintiff appears to use "Gwen Oliver" and "Gwendolyn Oliver" interchangeably to refer to Gwen Oliver, a named defendant in this case.

6

(1) Alethia Ramsey falsely claimed that plaintiff posed a threat to her safety and described plaintiff as having behavioral problems;

(2) Demitta Wilson and Patrick Wilson falsely reported to the probate court in Dothan, AL that plaintiff was mentally ill, bipolar, refused help, and was a threat;

(3) Alethia and Hart Ramsey "ridiculed [plaintiff] in front of the entire church" by telling her family that she was the devil;

(4) Ron Wilson and Martha Wilson forced plaintiff to take medications for an illness she did not have;

(5) Demitta Wilson provoked plaintiff and "caused strife within the family";

(6) Gwendolyn Oliver filed false paperwork to evict plaintiff from her home;

(7) Ron Wilson, Patrick Wilson, and other members of plaintiff's family conspired against plaintiff by influencing her jobs, mortgage company, and landlord;

(8) Ron Wilson followed plaintiff every month and a half and spoke with authorities to terminate a case which was being appealed;

(9) Alethia Ramsey followed plaintiff on multiple occasions and started "those trails of lies in the year of 2004 [which] led to [plaintiff's] false imprisonment";

(10) Gwen Oliver followed plaintiff on an unspecified occasion; and

(11) Louise Wilson described plaintiff as aggressive to Adrian Folmer, a police officer, which caused him to harass plaintiff in Demopolis, AL.

Doc. 8 at 3-6. Plaintiff stated that allegation (5) occurred in 2014, that allegation (9) began in 2004, and that allegation (11) occurred in 2019. *Id.* Plaintiff did not give specific dates for any of the other allegations listed. Plaintiff also re-alleges that she was "left choked in a wheel chair by a Houston County Sheriff at the Alabama Medical Center Dothan," and restrained to a bed for seven days without clothes "trying to get [plaintiff] sent further or away while they all broke and entered into my home stealing 5 dollars out of my bible[,]

7

leaving all my belongings on the side of the road[.]" *Id.* at 4. This court understands plaintiff's statement that "[i]n 2009 I had a very bad drug problem that caused me to respond to things in an unusual way along with coping with two deaths and a bad marriage[]" to be an explanation of circumstances that plaintiff feels defendants used to plaintiff's detriment. *Id.* at 3.

Plaintiff also submitted a compilation of other documents as an attachment to her first amended complaint. Doc. 8-1. The attached documents appear to show that Patrick Wilson, plaintiff's brother, petitioned to have plaintiff committed involuntarily in 2017 before Probate Judge Patrick H. Davenport. *Id.* at 2-5. They also include several state court rulings on an unspecified matter, *id.* at 6-7; an IRS information referral by plaintiff alleging harassment, mail tampering, and stalking by Gwendolyn Oliver and Dominique Oliver, *id.* at 8; a closing letter from the Judicial Inquiry Commission to plaintiff dated September 17, 2018, *id.* at 9; a circuit court order and judgment granting ACM VISION V, LLC's motion for judgment on the pleadings against plaintiff on July 17, 2017, *id.* at 11; a writ of restitution or possession directing law enforcement officers to recover possession of plaintiff's residence on August 15, 2017, *id.* at 10; and filings in other municipal and federal cases, *id.* at 12-15.[5]

Plaintiff's first amended complaint both adds to the allegations in her initial complaint and puts forward several new allegations. As with plaintiff's initial complaint, the first amended complaint does not state any specific cause of action and also contains

---

[5] It is not immediately clear to this court what the attached documents add to plaintiff's allegations.

insufficient factual allegations for the court reasonably to infer that defendants' conduct was unlawful.

    D.    Second Amended Complaint

On June 12, 2019, the court directed plaintiff to file a third complaint ("second amended complaint") to "explain which federal law she believes that her family members, the Ramseys, and Gwen Oliver broke" by "clearly ty[ing] her factual allegations to a violation of federal law" and list "[e]ach different violation of federal law . . . in a separate numbered paragraph." Doc. 9. Again, the court cautioned plaintiff that failure to comply with the court's order may result in dismissal of plaintiff's case. Plaintiff submitted a filing styled as a "second amended complaint" on August 20, 2019 in response to the court's order. Doc. 10.

Plaintiff's second amended complaint is identical to a filing submitted to the court in another case, and plaintiff's reason for filing identical pleadings in separate cases is unclear.[6] *See* Amended Complaint, *Wilson v. Alabama*, No. 1:18-CV-823-ECM-SMD (M.D. Ala. Aug. 20, 2019), ECF No. 15. The first page of plaintiff's second amended complaint lists the State of Alabama and the "Headland Police," (Doc. 10 at 1), and the second page lists three separate federal cases, including the instant case, *Wilson v. Alabama* —which plaintiff captions as "Wilson v. Headland Police, No. 1:18-CV-00823-ECM-SRW"— and *Wilson v. Gordon*, No. 1:18-CV-00387-WKW-SRW (M.D. Ala.). After the first two pages, the second amended complaint appears to be comprised of a collection of

---

[6] As in this case, the filing in *Wilson v. Alabama* was responsive to a magistrate judge's order to amend a complaint in compliance with the pleading standards set out by the Federal Rules of Civil Procedure for the purposes of screening under 28 U.S.C. § 1915(e).

9

documents of varying relevance to the defendants named in this case. The documents are as follows:

(a) an undated statement, citing "8 U.S. Code § 1324c"[7] which appears to reference an order by Judge Stephen Doyle in a separate case, (Order, *Wilson v. Alabama*, 1:18-CV-823-ECM-SMD (Aug. 12, 2019), ECF No. 14), and to maintain that the order misstates plaintiff's allegations against the Headland Police department, noting that "this is not an amend[, this is] a request for correction" (*id.* at 3);

(b) an undated statement which alleges that officers Milhide and Smith of the Dothan Police Department followed plaintiff on numerous occasions, that Dominique Oliver sabotaged the headlights and fuel system of plaintiff's car, that defendants Alethia Ramsey, Gwen Oliver, and Phyliss Bolden "dress[ed] up [and] call[ed] my jobs and came with false allegations," and that "a crime was committed" by Clifford Oliver (*id.* at 4-6);

(c) an undated statement entitled "complaint to police" which appears to be addressed to the Headland Police Department, alleging "harassment and stalking" by unidentified members of the department (*id.* at 7);

(d) a letter "to the sheriff's department" written on December 2, 2018, alleging harassment and discrimination by unspecified members of the sheriff's department (*id.* at 8);

(e) a "School Work Excuse Form" from Wiregrass Hope Group, which is largely illegible but appears to be dated sometime in March of 2018 (*id.* at 9);

(f) a filing by plaintiff in a municipal court case, dated November 6, 2018, case number 37-DV-2018-90039.00, describing a dispute between plaintiff and her landlord, alleged harassment by police officers, and vandalism of plaintiff's car (*id.* at 10-11);

(g) the last page of a municipal court order issued by district judge Derek Peterson, dated December 17, 2018, ordering a writ of possession to be issued on January 2, 2019 with regard to 300 Boynton Street, Apartment 105 in Headland, AL, which plaintiff appears to have annotated with the words, "'sheriff' you have until January 7th"—(*id.* at 12);

---

[7] 8 U.S.C. § 1324c pertains to fraud committed in the course of immigration proceedings and does not appear to be pertinent to any of plaintiff's allegations.

10

(h) a municipal court order issued by district judge James D. Peterson, dated December 17, 2018, entering a money judgment against plaintiff—defendant in the case, brought by Headland Apartments—(*id.* at 13);

(i) an undated statement written by plaintiff that cites "U.S. Code. § 1324c," describes four reports regarding harassment and vandalism by the Headland Police Department, and alleges an unspecified conflict of interest with reference to case number 1:18-CV-00387 (*id.* at 14);

(j) a document which appears to have been produced by the Alabama Council for Affordable and Rural Housing entitled "Exhibit C of Lease" on which plaintiff appears to have circled paragraphs 25, 29, and 30, which set out the responsible conduct of residents and their guests in consideration of their neighbors (*id.* at 15);

(k) a statement by plaintiff dated August 18, 2019 which makes numerous allegations about harassment by Mark Jones, Paxton Smith, Adrian Folmer, Rose Gordon, and Steve Parrish, none of whom are defendants in this case (*id.* at 16-18);

(l) a statement by plaintiff dated July 26, 2019 which alleges that "ABI's members of the illumanati" have been harassing plaintiff for years, causing her to lose "jobs, houses, cars, pets and family" (*id.* at 19);

(m) an undated statement by plaintiff which alleges that Teresa Jordan, who is not a defendant in this case, entered plaintiffs apartment and "create[d] the hostile environment, that an unnamed "neighbor down stairs" slammed doors, banged on doors "asking for cocaine . . . ma[de] prank phone calls, l[ied] to authorities" and produced crack cocaine, and that unnamed individuals "used lies to start political corruption" (*id.* at 20-21);

(n) an undated statement by plaintiff which asserts that "[a]ll three cases are affiliated yet you see and can't understand the contents of my complaint the document received are from the other party," and alleges that Ron Wilson tampered with plaintiff's personal information to locate her and that her family told lies and used false witnesses "to cover the mischief" related to Benjamin Lewis (*id.* at 22-23);

(o) an undated statement by plaintiff which alleges that Dominique Oliver, who is not a defendant in this case, together with her mother (this court understands Gwen Oliver, who is a named defendant, to be Dominique Oliver's mother), vandalized unspecified property belonging to plaintiff, that Dominique Oliver "raised guns in [plaintiff's] face," and that Ron Wilson, a named defendant, made unspecified false allegations about plaintiff which "labeled [plaintiff as] aggressive which caused abuse" (*id.* at 24);

11

(p) an undated partial work order for an eviction scheduled for January 9, 2013 (*id.* at 25);

(q) a transport order issued by Houston County probate judge Patrick Davenport, dated August 30, 2017, ordering the sheriff of Houston County to take plaintiff into custody and transport plaintiff to the Office of the Judge Probate which states, "Be advised respondent is aggressive and violent" (*id.* at 26);

(r) an Alabama state writ of restitution or possession issued by Houston County clerk Carla Woodall, filed July 24, 2017 and issued August 15, 2017, ordering the recovery of 314 Oglethorpe Street, Dothan, AL 36301 from plaintiff and Clifford Oliver on behalf of ACM VISION V, LLC (*id.* at 27);

(s) an undated Alabama state statement of claim of eviction or unlawful detainer filed by Headland Greentree Apartments filed against plaintiff with regard to 300 Boynton Street, Apartment 105, Headland, AL 36345 for failure to pay rent (*id.* at 28); and

(t) an order and final judgment by circuit judge Kevin Moulton, dated July 14, 2017, granting ACM VISION V, LLC's motion for judgment on the pleadings and ordering that a writ of possession be issued for property in plaintiff's—defendant in the case—possession on August 13, 2017 (*id.* at 29).

Of at least 20 separate documents which comprise plaintiff's second amended complaint, only three documents, (b), (n), and (o), address actions by named defendants. The three documents include allegations that

(1) defendants Alethia Ramsey, Gwen Oliver, and Phyliss Bolden made false allegations about plaintiff;

(2) defendant Ron Wilson tampered with plaintiff's personal information in order to locate plaintiff;

(3) defendant Ron Wilson made false allegations about plaintiff; and

(4) defendant Gwen Oliver, together with her daughter Dominique Oliver, vandalized plaintiff's property.

*See id.* at 4-6, 22-24.

Plaintiff's second amended complaint does not identify any specific causes of action under which she brings claims, and plaintiff's allegations about defendants' behavior do not provide sufficient detail to state a plausible claim to relief. A complaint which tenders only "naked assertions devoid of further factual enhancement," and "pleads facts that are merely consistent with a defendant's liability," "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). In other words, where the complaint does not enable the court "to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

### E. Second Supplemental Filing

On September 19, 2019, plaintiff submitted an additional filing to the court with further allegations against individuals not named in any of plaintiff's prior filings. Doc. 11. The cover page of plaintiff's filing lists Rex Flowers, Zack Flucker, Charles Jones, the Demopolis Police Department, and Demopolis City Hall. *Id.* at 1. It is unclear whether plaintiff intends to add the listed individuals and entities as defendants to this suit. The filing alleges that Rex Flowers, the Demopolis chief of police, responded to a call for assistance by plaintiff by stating that "I'm not coming out to your home and you complained on me." *Id.* at 2. Plaintiff also makes reference to "having a gun pulled on me and charged from behind" without explaining who carried out those actions and whether that incident was the subject of an allegation. *Id.* The filing apparently alleges that Zack Flucker, a police officer, Tommie Reese, and Tommy Johnson, together with Flowers, harassed plaintiff by filling "every parking space in the US Jones school parking lot" and forcing her to park elsewhere. *Id.* Plaintiff appears to allege that Melanee Coates made

false allegations, recorded plaintiff, threatened plaintiff with a concealed weapon, and made defamatory statements about plaintiff at her place of employment. *Id.* at 3. Plaintiff also notes that she reported Zack Flucker and Tommy Johnson for "sitting in the parking lot"; that Charles Jones, a Demopolis city official, drove by plaintiff's home; and that "2 guns were pulled and the existing cases are being used." *Id.* at 3.

Plaintiff's filing fails to state any specific cause of action and contains no factual allegations related to the defendants in this case. While plaintiff's filing makes new allegations against the individuals named, those allegations do not constitute sufficient factual matter to state a claim for relief which is plausible on its face.

  F. Failure to Cure Deficiencies

Generally, the Federal Rules of Civil Procedure require the court to give plaintiffs leave to amend a pleading freely when "justice so requires." Fed. R. Civ. P. 15(a). "A district court need not, however, allow an amendment (1) where there has been . . . repeated failure to cure deficiencies by amendment previously allowed[.]" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As noted above, *pro se* litigants are held to a less stringent standard than litigants with attorney representation. However, "once a *pro se* [*in forma pauperis*] litigant is in court, [she] is subject to the relevant law and rules of the court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). "Even a *pro se* litigant is required to comply with the Federal Rules of Civil Procedure, particularly after being expressly directed to do so." *Giles v. Wal-Mart Dist. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009) (per curiam) (affirming dismissal of a *pro se* litigant's amended complaint). And the less-stringent standard to which the court holds *pro se* pleadings "does not give a court

license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal quotations omitted) (overruled in part on other grounds).

The court's May 30, 2019 order exlained that Rule 8 of the Federal Rules of Civil Procedure "requires a complaint to contain a short and plain statement showing that the plaintiff is entitled to relief," that the "allegations should be simple, concise, and direct," and that Rule 10 requires each claim to "be stated in separate, numbered paragraphs, limited as far as practicable to a single set of circumstances." Doc. 6 at 1 (internal citations omitted). The order specifically instructed plaintiff to articulate factual allegations explaining the alleged conduct by defendants that is at issue, to specify which defendant committed each wrongful act, to include clear allegations of fact showing that plaintiff is entitled to relief under federal law, and to indicate clearly which specific factual allegations provide support for each of plaintiff's claims. Doc. 6 at 1-3. The court's June 12, 2019 order further instructed plaintiff to file a third complaint "that clearly ties her factual allegations to a violation of federal law" and to list each different violation of federal law in a separate numbered paragraph containing the relevant facts to the specific violation of federal law. Doc. 9 at 1. Both orders warned plaintiff that her failure to comply may result in a recommendation of dismissal. Doc. 6 at 3; Doc. 9 at 2.

Plaintiff's amended filings did not contain short and plain statements of her claims, or state each claim in separate, numbered paragraphs that explain which alleged conduct of each defendant is at issue and clearly indicate the specific factual allegations that provide support for her claims. Instead, plaintiff's filings consisted of "a lengthy series of

15

unnumbered paragraphs containing what amounts to a personal narrative suggesting, but not clearly and simply stating, a myriad of potential claims." *Giles*, 359 F. App'x at 93.

Taken either separately or together, plaintiff's pleadings fall under two of the four types of "shotgun pleadings" identified by the Eleventh Circuit which fail to meet the pleading standards articulated by Rules 8 and 10 of the Federal Rules of Civil Procedure: those that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and those that do not "separat[e] into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). Shotgun pleadings fail to give defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Id.* at 1323. Shotgun pleadings also make it difficult for the court to discern what claims are being asserted and whether a party has pleaded sufficient factual information to connect his or her claims to the injuries suffered. *See Worthy v. Phenix City*, 930 F.3d 1206, 1214 (11th Cir. 2019).

In this case, although plaintiff's shotgun pleadings purport to set out claims for extortion, invasion, attempted murder, discrimination, racism, bigotry, indignation, famine, and loss of shelter, they do not clearly identify any causes of action or the alleged conduct of defendants at issue or tie those allegations to plaintiff's specific claims, and they fail to provide sufficient factual bases for the court to construe them as pleading a plausible claim for relief. Given plaintiff's failure to comply with the court's specific and repeated instructions to on how to cure the deficiencies in her complaint, and clear warnings to the plaintiff that failure to comply with the court's instructions may result in a recommendation

of dismissal, this court recommends that plaintiff's complaint, as amended, be dismissed for failure to state a claim in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Conclusion

Accordingly, it is the RECOMMENDATION of the magistrate judge that this matter be DISMISSED prior to service of process in accordance with 28 U.S.C. § 1915(e)(2)(b). It is further:

ORDERED that **on or before March 23, 2019**, plaintiff may file an objection to this Report and Recommendation. Any objection filed must specifically identify the findings in the magistrate judge's recommendation to which plaintiff objects. Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the recommendations of the magistrate judge shall bar a party from a *de novo* determination by the district court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon the grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 966 F.2d 1144, 1149 (11th Cir. 1993) (per curiam); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 9th day of March, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge